Paul J. O'Connell v. Commissioner.
O'Connell v. Commissioner
Docket No. 818-71.
United States Tax Court
T.C. Memo 1972-171; 1972 Tax Ct. Memo LEXIS 85; 31 T.C.M. (CCH) 837; T.C.M. (RIA) 72171; August 14, 1972
*85 (1) Petitioner, an officer and employee of a corporation, was assigned an office in the company's quarters, to which he had access (2) Petitioner claimed additional deductions for contributions at any time. He maintained an office in his apartment, where he did business as a tax organizations. He introduced no evidence to substantiate the consultant, attended to his investments, and did work for religious or social organizations. He worked on some of the business of his employer in his apartment-office. 838 Held: Petitioner is not entitled to deductions for expenses of his apartment-office as related to the company's business. to religious or charitable payments or to show that the organizations were exempt. Held: Petitioner is not entitled to the additional deductions claimed. Paul J. O'Connell, pro se, 3211 Westbrook Drive, #2, Cincinnati, Ohio. Donald W. Mosser, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax of the petitioner and additions to tax under section 6651(a) (1), Internal Revenue Code of 1954, for failure timely to file returns, as follows: Addition to Tax
Year
Deficiency
Sec. 6651(a)(1)
1966
$109.84
$27.46
1967
79.08
19.77
1968
214.53
53.63
*87 At the hearing the respondent corrected the determination of the additions to tax. The present determination is no addition for the year 1966, $19.16 for the year 1967, and $29.93 for the year 1968. Also at the hearing petitioner filed an amended petition claiming additional deductions as follows: 1966
1967
1968
Additional office expenses
$ 784.70
$ 787.57
$ 832.11
Bank checks and service
10.70
12.60
7.40
Additional contributions
3,245.75
2,682.01
2,258.92
Investment tax credit carryover from 1965
89.10
The principal issue is whether petitioner, an officer and employee of a corporation, is entitled to deductions for certain expenses of maintaining an office in his home as ordinary and necessary business expenses. If so, the amount of the allowable deduction remains to be determined. Certain expenses were claimed as deductions on the tax returns and other amounts are claimed in an amended petition. A second issue is whether the additions to tax for failure to file timely returns were properly determined. Another issue, raised by the amended petition, is whether petitioner is entitled to further deductions not claimed on his returns *88 for additional charitable contributions, amounts expended for bank checks and service charges, and an investment tax credit carryover to the year 1966. Findings of Fact Some facts are stipulated. The stipulations of fact and the exhibits attached thereto are incorporated by reference. Paul J. O'Connell, the petitioner, resided in Cincinnati, Ohio, during the taxable years 1966, 1967 and 1968, and at the time of the filing of the petition herein. Petitioner's individual income tax returns for the calendar years 1966, 1967, and 1968 were obtained by an internal revenue agent and filed with the district director of internal revenue at Cincinnati on March 30, 1970. Natmar, Inc., is a corporation doing business in Cincinnati. It was formerly named National Marking Machine Company. Natmar, Inc., manufactures and sells marking machines, inks, conveyors and supplies for the commercial laundry and dry cleaning industry. In the taxable years Natmar had, on the average, 100 employees. Petitioner was an officer and employee of Natmar during 1966, 1967, and 1968. He was comptroller of Natmar from January 1966. From March 1966 he was also personnel manager, from April 1966 he was chairman *89 of the trustees of the profitsharing trust fund and from February 1967 was corporate secretary, holding all these positions concurrently. Petitioner was furnished an office at the offices of Natmar. The dimensions of his office were approximately six by nine feet. It was enclosed by walls on two sides, a partition on a third side and a table on the fourth. Petitioner was furnished a key to the Natmar offices and could have access to his office at any time during or after business hours of the company. There was 839 a vault in the Natmar offices for important papers and confidential files. Petitioner occupied a three-room apartment at 3211 Westbrook Drive, #2. He paid rent in the amount of $1,332.00 per year in the taxable years. His expenses for electricity amounted to $97.70, $108.57 and $107.45 and his telephone expenses were $57.30, $58.08 and $58.08 in the years 1966, 1967, and 1968 respectively. In petitioner's income tax returns he stated his occupation as "controller and tax consultant." He showed Natmar, Inc. as his employer. Among the deductions claimed was an item under "Miscellaneous Deductions" of "Office Expenses" in the amounts of $778.10, $732.67 and $798.22 *90 in the respective years 1966, 1967 and 1968. In an attached page he listed contributions to charitable or religious organizations in the total amounts of $129.02, $185.52, and $276.00 in the respective years. Respondent disallowed the claimed deductions for office expenses. These were expenses of his apartment which petitioner alleged were related to his employment with Natmar. In 1969 petitioner left the employ of Natmar. His successor as secretary and comptroller was Robert H. Darling, who also assumed the petitioner's other duties. Darling was not required by Natmar to work at his home on company business, nor was it necessary, but sometimes he did so for his own convenience. Petitioner's income tax returns reported income from an investment referred to as "Dorgene Apartments" and expenses related thereto as follows: 1966
1967
1968
Income
$1,320.00
$1,320.00
$1,415.00
Expenses
Insurance
60.00
60.00
74.00
Interest
575.58
527.27
476.25
Maintenance & Repairs
148.68
247.78
229.04
Property Taxes
276.86
229.50
235.22
Depreciation
750.00
750.00
750.00
Other expenses 392.26
592.84
541.70
Total expense
$2,203.38
$2,407.39
$2,306.21
Loss
$ 883.38
$1,087.39
$ 891.21
*91 The depreciation was computed on a brick house purchased in 1964 at a cost of $18,000 plus $1,500 for furnishings and $1,500 for appliances. Petitioner's returns also reported income from his services as a tax consultant in the gross amounts of $1,170.00 for 1966, $1.170,000 for 1967, and $725.00 for 1968. He claimed deductions for a part of the rent and for other office expenses relating to his services as a tax consultant. These deductions were allowed by respondent. Petitioner's returns also reported dividends and capital gains in the amounts of $611.44 for 1966, $732.99 for 1967, and $851.31 for 1968. On his income tax returns the petitioner claimed the following deductions for contributions: 1966
1967
1968
Baden Club, Cincinnati, Ohio
$ 5.00
$ 5.00
$ 5.00
Catholic Telegraph, Cincinnati, Ohio
4.00
8.00
4.00
Cincinnati Catholic Alumni Club, Cincinnati
1.00
8.00
1.00
Church of the Appalachia, West Liberty, Ky
21.00
Covington Latin School, Covington, Ky
3.00
3.00
3.00
Goodwill Industries, Cincinnati
15.00
15.00
Goodwill Industries, Covington, Ky
15.00
Holy Cross Church, Latonia, Ky
43.00
12.50
8.50
The Messenger, Covington, Ky
3.00
4.00
4.00
Kentucky Historical Society, Frankfort, Ky
5.00
Univ. Notre Dame, Notre Dame, Ind.
24.02
24.02
25.02
Xavier Univ., Cincinnati, Ohio
1.00
1.00
1.00
Miscellaneous Churches
25.00
45.00
48.00
Miscellaneous Organizations
5.00
5.00
12.00
United Appeal, Cincinnati, O
55.00
United Appeal
60.00
Neediest Kids of All Fund
63.48
Total Contributions
$129.02
$185.52
$276.00
These deductions were allowed by respondent.
*92 840 During the calendar year 1966, petitioner issued checks payable to the below listed persons, businesses or organizations in the amounts respectively indicated. All of these checks were drawn on the petitioner's personal checking account: Payee
Amount
Cincinnati Catholic Alumni Club
$ 15.00
Cincinnati Catholic Alumni Club
2.00
Columbus Catholic Alumni Club
29.00
The Baden Club
17.00
Chicago Catholic Alumni Club
45.00
Catholic Telegraph
4.00
Catholic Telegraph 4.00
Total
$116.00
During the calendar year 1967, petitioner issued checks payable to the below listed persons, businesses or organizations in the amounts respectively indicated. All of these checks were drawn on the petitioner's personal checking account: Payee
Amount
Cincinnati Catholic Alumni Club
$ 12.00
C.A.C. of Louisville
45.00
University of Notre Dame
13.75
University of Notre Dame
13.75
University of Notre Dame
13.75
NACAC High Times
110.00
Fox Products Company
23.01
Fox Products Company
3.60
C.A.C. of Greater K.C. 43.00
Total
$277.86
During the calendar year 1968, petitioner issued checks payable to the below listed persons, businesses *93 or organizations in the amounts respectively indicated. All of these checks were drawn on the petitioner's personal checking account: Payee
Amount
Alfred L. Martellotti
$ 25.00
The Messenger
16.00
Natman, Inc.[sic]
5.00
University of Notre Dame
14.75
University of Notre Dame
14.75
University of Notre Dame
15.00
University of Notre Dame
14.75
University of Notre Dame
12.75
University of Notre Dame
14.75
Bostitch
103.29
Aleene Pfaffinger
28.00
The Baden Club
25.00
C.A.C. of Milwaukee 46.95
Total
$335.99
It is stipulated that petitioner has substantiated that he paid certain amounts in the taxable years for specific items, as follows: 1966 200 reams Bond paper 20 quire stencils 3000 index cards 1000 Christmas cards Lodging (5 items) Various other items 1967 200 reams Bond paper 100 reams paper 20 pounds ink 65 quire stencils 1000 envelopes 4000 index cards 1000 Christmas cards Lodging (5 items) Rental "tails" Engraving on beer mugs Balls and toys Replace speaker in Stereo Various other items 1968 300 reams Bond paper 20 pounds ink 10 reams addressing labels 18,000 index cards Lodging *94 (4 items) Printing expense Service for Stereo 12 sets 3 X 5 guides 19 3 X 5 card file boxes Donation of flowers Various other items The following schedules show petitioner's computation of the "office expenses" for which the contested deduction on the petitioner's tax returns was claimed. Column (1) shows the total expense of the petitioner's three room apartment, according to petitioner. Column (2) shows the amount allocated by petitioner to his employment by Natmar, Inc. 841 1966
1967
1968
(1)
(2)
(1)
(2)
(1)
(2)
Rent
$1,332.00
$532.80
$1,332.00
$532.80
$1,332.00
$532.80
Electricity
97.70
39.08
108.57
43.43
107.45
42.98
Cleaning
9.14
4.00
9.00
4.00
9.00
4.00
Office Furnishings
7.15
4.00
7.00
4.00
27.00
20.00
Depreciation Furn. & Fixt.
136.86
60.93
136.86
60.93
141.36
60.93
Office Machinery & Equip.
239.86
34.07
235.86
34.07
238.45
34.07
10 File Cabinets
142.06
14.21
142.06
14.21
142.06
14.21
Business, Law & Tax Library 62.10
64.10
66.10
Total Depreciation 580.88
109.21
578.88
109.21
587.97
109.21
Total Expense $2,026.87
$689.09
$2,035.45
$693.44
$2,063.42
$708.99
Telephone Base Rate
57.15
22.86 58.08
23.23
58.08
23.23
Business Toll Call .15
.15
Total 57.30
23.01
Professional Dues & Subs. 91.00
20.00
91.00
20.00
91.00
20.00
Printing Expense
25.00
25.00
25.00
Office Supplies
20.00
20.00
20.00
Postage 1.00 1.00 1.00
Total 46.00 46.00 46.00
Grand Total $778.10 $782.67 $798.22
*95 Petitioner was not required by Natmar to maintain an office in his home for the performance of his duties with that company, nor was he required by Natmar to work at home on the business of the company. Any work he performed for Natmar at his apartment was done there for his own convenience. The petitioner is not entitled to the deductions claimed on his returns for office expenses in the amounts of $778.10, $782.67 and $798.22 for 1966, 1967, and 1968 respectively. He is not entitled to the additional deductions for office expenses claimed in his amended petition in the amounts of $784.70, $787.57 and $832.11 for such years respectively. The petitioner is liable for the additions to tax determined for 1967 and 1968. Petitioner's failure to file timely returns for such years was without reasonable cause. The petitioner is not entitled to additional deductions for bank checks and service charges claimed in his amended petition. The petitioner is not entitled to an investment credit carryover for the year 1966 as claimed in his amended petition. The petitioner is not entitled to deductions for contributions in excess of the amounts claimed on his returns for 1966, 1967, or *96 1968. Opinion The principal issue raised in the original petition is whether petitioner is entitled to deduct as ordinary and necessary business expenses some of the expenses of maintaining an office in his home. He was comptroller of the corporation which was his employer and part of the time was corporate secretary. He had other interests. He offered his services as a tax consultant and derived some income from this. He was an officer or board member of the National Association of Catholic Alumni Clubs, or of one of its member clubs, and devoted some time and effort to work for them. According to his tax returns he had an investment in a house or apartment building, referred to as Dorgene Apartments, from which income was derived and for which he paid certain expense of taxes, interest, insurance and maintenance in the taxable years. He also derived income from investments in securities. Petitioner was single. He resided in a three-room apartment approximately 20 X 36 feet in area. The largest room, which he refers to as his working room, was equipped with tables, desk, chairs, couch, bookcases and electric calculator. The small room, which petitioner refers to as his printing *97 room, contained a bed, a chest of drawers, a mimeograph duplicator, and mimeograph supplies. The third third room, which he refers to as his file room, contained a bed, bookcases, several filing cabinets and a typewriter. Petitioner's employer was Natmar, Inc., a corporation manufacturing and selling marking machines for industrial launderers and dry cleaners. The corporation had approximately 100 employees. The petitioner was assigned office space in the corporation's quarters and was furnished a key to 842 the building. He had access to his office at any time. His office was about six by nine feet, with walls on two sides, a semi-partition on a third, and the fourth side marked by a table. There were four file cabinets in this space. Petitioner could place confidential files in the company vault. Petitioner testified that he was required by the president and chairman of the board of the company to maintain an office in his home and to perform some of his duties for the company at the office in his home. This is not corroborated and is to some extent contradicted. In his original petition he alleged that in 1966 the Natmar board of directors "passed a resolution which appears *98 in the NATMAR, INC. corporate minutes, that it was expected of officers of NATMAR, INC. to maintain an office at their respective homes for the conduct of company (NATMAR, INC.) business." At the hearing of this case petitioner admitted that the corporate minutes were silent on this point. Petitioner was secretary of the corporation and must have known what the minutes stated. His successor, who appeared as a witness for the respondent, testified that he was not required by the officers of the company to work at his home, but sometimes did so for his own convenience. Petitioner introduced no evidence in support of his contention that he was required to perform company work at his home. Nor did he support many of the items in his computation of the related expenses. In Rev. Rul. 62-180, 1962-2 C.B. 52, the Internal Revenue Service furnished guidelines for determining the amount of a deduction for expenses attributable to the portion of an individual's personal residence used in the performance of his duties as an employee. This ruling stated, in part: An employee who, as a condition of his employment, is required to provide his own space and facilities for performance *99 of his duties and regularly uses a portion of his personal residence for that purpose may deduct a pro rata portion of the expenses of maintenance and depreciation on his residence. However, the voluntary, occasional, or incidental use by an employee of a part of his residence in connection with his employment does not entitle him to a business expense deduction for any portion of the depreciation and expenses of maintaining his residence. * * * The burden of proof rests upon the taxpayer to establish (1) that, as a condition of his employment, he is required to provide his own space and facilities for performance of some of his duties, (2) that he regularly uses a part of his personal residence for that purpose, (3) the portion of his personal residence which is so used, (4) the extent of such use, and (5) the pro rata portion of the depreciation and expenses for maintaining his residence which is properly attributable to such use. * * * Example (4). D, a corporation executive, can remain at or return to the company's offices when he finds it necessary to work after regular hours. As a matter of personal convenience, however, he takes work to his residence and has furnished one *100 room there as an office in order to have a place where he can work undisturbed. Since office space is available to him after hours at the company's offices, the expenses attributable to that part of his personal residence which he maintains as an office are, therefore, not ordinary and necessary business expenses and are not deductible. [1]
*101 Petitioner cites Newi v. Commissioner, 432 F. 2d 998 (C.A. 2, 1970), affirming a Memorandum Opinion of this Court, holding that in certain circumstances a salesman of television time was entitled to deduction of certain expenses of his apartment when he devoted a portion of it to studying the programs of his own and competing networks and planning his next day's work, it being more practical to do such work at home than at his company's office. In the present case it is not shown that petitioner 843 could not have done his work at the Natmar office as well or better than at his apartment. Petitioner had established in his apartment comfortable office facilities which he maintained for his other business, charitable and personal transactions. It appears more reasonable to conclude that he found it more convenient and pleasant to work in his apartment than in the company offices. His work at the apartment was voluntary and for his own convenience. Petitioner has not shown how much of his time was actually spent in working in his apartment on Natmar business. He introduced an exhibit purporting to show the average number of hours per week devoted to Natmar business, *102 charitable activities, to his profession as a tax consultant and to his investments, and distributed between his office at Natmar, his office at home and his activities elsewhere. In this he represents that he worked on Natmar business for 24 hours per week at the Natmar office and 24 hours at his apartment office. There is no verification or corroboration of this estimate, and we consider it improbable. The petitioner has not met his burden of proof and we hold that respondent has not erred in disallowing the claimed deduction for office expenses. In his amended petition filed at the hearing the petitioner claims additional office expenses in the amounts of $784.70 for 1966, $787.57 for 1967, and $832.11 for 1968, for additional bank checks and service charges in the amounts of $10.70 for 1966, $12.60 for 1967, and $7.40 for 1968, and for an investment tax credit carryover of $89.10 from 1965 to 1966. Respondent, in answer to the amended petition, denied each of the allegations. The petitioner has not substantiated or verified any of the items here involved. The burden of proving these claims is upon the petitioner. These additional claims are rejected for failure of proof. *103 Also, in his amended petition, petitioner claims additional deductions of $3,245.75 for 1966, $2,682.01 for 1967, and $2,258.92 for 1968, for additional contributions, not previously claimed on his income tax returns. The contributions claimed on the returns in the amounts of $129.02 for 1966, $185.52 for 1967, and $276.00 for 1968 were allowed by respondent. In his opening statement [2] petitioner explained that the additional contributions consisted primarily of mimeograph supplies which he purchased and donated to the Catholic Alumni Club or The Baden Club, that in his opinion these organizations are Catholic Youth Organizations exempt under section 501(c)(3) of the Internal Revenue Code of 1954, and that contributions made to them should be deductible under section 170(c)(2). He said that in 1966 he was president of the Cincinnati Chapter of the National Association of Catholic Alumni Clubs, in 1967 he was on the Executive and Advisory Board of the National Association and in 1967 or 1968 he was National Director of Publicity for the National Association. Respondent argues *104 that the clubs involved are social clubs rather than religious or charitable organizations, and are not exempt organizations. It has been stipulated that petitioner has substantiated that he paid certain listed amounts for specific items or services. These included quantities of paper, mimeograph stencils, ink, printing expenses, and various other items. Although petitioner has shown that he paid certain amounts for certain items or services, there is no testimony and no other evidence that these items or services were given to or for particular organizations or that the organizations receiving the benefit of these payments were exempt under section 501(c)(3). The petitioner has failed entirely to carry the burden of proving these essential facts. [3]
*105 It was stipulated that petitioner issued checks payable to certain listed persons, businesses or organizations in the taxable years. The purpose of this stipulation is not apparent. If it was intended to be the 844 basis of a claim for additional deductions for contributions, the petitioner has omitted to show that the payees were exempt organizations or that checks to individuals were for the benefit of exempt organizations. Because of respondent's recomputation of the addition to tax, Decision will be entered under Rule 50. Footnotes
1. Petitioner was well aware of Rev. Rul. 62-180↩, and sought to show that the circumstances of his case were such that the expenses were allowable as a deduction. The Rev. Rul. gives examples, #1, #2, #3, in which 6%, 4% and 2% of certain expenses are allowable. However, petitioner's computation, shown in our findings of fact, grossly exaggerates the amount allowable if his claim were otherwise meritorious. For example, he allocates 40% of the rent for the entire apartment as an expense of Natmar business. His work for Natmar could have involved the use of only a small space, perhaps one-tenth of the apartment area, for a small part of the time, perhaps one-tenth, which might justify an allocation of not more than one percent of the rent, or $13.32 instead of $532.80 per year. His computation is also incongruous in claiming a part of the depreciation on his stereo and bed linen, purely personal items and on filing cabinets, not shown to be used in Natmar business.
2. Remarks made on opening statements are not under oath and are not evidence.↩
3. In petitioner's brief is a seven page computation in detail of $3,223.75 in 1966, $2,682.01 in 1967, and $2,233.92 in 1968 which he says, on brief, that he contributed to the Cincinnati Catholic Alumni Club. Some of the items have been substantiated in the stipulations as having been purchased by petitioner, other items have never been mentioned, as for example "Refreshments donated to volunteer workers $200.00," transportation to various conventions, detailed mailings, and tickets to football games donated as door prizes. There was not one iota of testimony or other evidence to establish the value of these other alleged contributions, or to prove that the Cincinnati Catholic Alumni Club was the beneficiary of any such donations. Furthermore, petitioner has not shown that such club was one of the Catholic Youth Organizations recognized as an exempt organization to which contributions may be made and be deductible by the donor.↩